1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11    KUSHA, INC., a California corporation,

12                            Plaintiff,
       vs.

13    INTERNATIONAL MODERN

14    INVESTMENT, etc., et al.,

15                         Defendants.

CASE NO. 12CV1140-LAB (MDD)

**ORDER GRANTING MOTION TO DISMISS FOR IMPROPER VENUE**

16

17       In this action, Plaintiff Kusha, Inc., a California corporation, brings claims of trademark

18    infringement against International Modern Investment, Inc., a Michigan corporation doing

19    business as Liberty Wholesale ("Liberty"). Both companies used trademarks incorporating

20    the word "Royal" on food products.  Liberty moved to dismiss for lack of personal jurisdiction

21    and for improper venue. In response, Kusha argued for specific personal jurisdiction, but if

22    not, it argued general jurisdiction exists. In the alternative, Liberty argued venue is improper

23    in this District and seeks dismissal on that basis.

24    **Legal Standards**

25       When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears

26    the burden of establishing personal jurisdiction. *Farmers Ins. Exchange v. Portage La Prairie*

27    *Mut. Ins. Co.*, 907 F.2d 911, 912 (9th Cir. 1990). Where, as here, the motion is based on

28    written materials, the plaintiff only needs to make a prima facie showing of jurisdictional facts

to meet his burden. Uncontroverted allegations in the complaint are to be taken as true. *AT & T v. Campagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996). Factual conflicts are resolved in the plaintiff's favor. *Id.*

Courts in the Ninth Circuit apply a three-part test to determine whether it can exercise personal jurisdiction over a nonresident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir.2004) (citation omitted). Kusha must satisfy the first two prongs, or personal jurisdiction is lacking. *Id.* If Kusha satisfies the first two prongs, the burden then shifts to Liberty to present a compelling case that exercise of jurisdiction would not be reasonable. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–78 (1985)).

Personal jurisdiction is normally a statewide concept; where, as here, no federal statute authorizes personal jurisdiction, the Court applies the law of the forum state. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is coextensive with the limits of due process. *Id.*

Venue, on the other hand, is specific to judicial districts. *See* 28 U.S.C. § 1391(b). The fact that there may be personal jurisdiction over Liberty in California doesn't mean this District is a proper venue.

**Discussion**

The parties each offer competent documentary evidence in the form of declarations, documents attested to by declarations, and requests for judicial notice.

/ / /

/ / /

1      **Kusha's Evidence**

2           Kusha is a California corporation with its headquarters in Irvine, which is located in

3    the Central District of California.  Kusha offers evidence that Liberty was a distributor of

4    Kusha's products for approximately 18 months during 2010 and 2011, during which Liberty

5    became familiar with Kusha's mark. Near the end of that period, Kusha learned that Liberty

6    was using the allegedly infringing mark.

7           Kusha also offers evidence Liberty operated a website on which wholesale customers

8    could order its products, including those bearing the allegedly infringing mark.

9      **Liberty's Evidence**

10          Liberty offers evidence that it does not now have, nor has it ever had, any business

11   operations, offices, bank accounts, financial assets, or employees in California. Liberty offers

12   evidence it has never sold products in California; rather, it sells its products in Warren,

13   Michigan to customers who are wholesalers, and customers then make their own shipping

14   arrangements.  Concerning the website, Liberty offers evidence that it is only accessible to

15   registered customers, and that it has no registered customers in California.

16     **Discussion of Evidence**

17          There is little dispute over the facts; the parties' main dispute here is what their

18   significance is, and how the law applies to them. While it is clear Liberty operates a website

19   on which products bearing the allegedly infringing marks are sold, Liberty's evidence shows

20   it is only used by customers outside of California. The purchases are consummated in

21   Michigan, and the customers, who are wholesalers, then sell the products. Some of those

22   products made their way to the shelves of stores in this District.

23          Liberty has several identifiable connections to California. First, it had a business

24   relationship with Kusha, which is located in California, as its distributor. The mark on

25   Liberty's products is alleged to infringe a mark on Kusha's products, so the effects of alleged

26   infringement were felt in California. *See Washington Shoe Co. v. A-Z Sporting goods, Inc.*,

27   704 F.3d 668, 677–78 (9th Cir. 2012) (citing, *inter alia*, *Columbia Pictures Television v.*

28   *Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284 (9th cir. 1997) (discussing precedent

and concluding that purposeful availment prong is satisfied where defendant knew the impact of willful infringement would be felt in the forum state). Finally, some of the products were made their way to the shelves of some retail stores in this District.

It is primarily the "effects test" discussed in *Columbia Pictures* that rescues Kusha's personal jurisdiction argument. Kusha's uncontroverted allegations show Liberty knew Kusha was located in California, knew what products Kusha sold and what marks it used, and intentionally put its products on the market with the disputed marks on them. Assuming, as the Court must at this stage, that Liberty knew the marks on its own products infringed Kusha's marks, Liberty knew the effects of its infringement would be felt in the forum state. This is enough to establish personal availment. *See Washington Shoe*, 704 F.3d at 676–678 (distinguishing cases where infringement was apparently negligent and untargeted from those where the alleged infringement was willful and the defendant knew the effect would be felt the plaintiff was located).

Because the claims arise from Liberty's California-related conduct, both the first two prongs are satisfied.

**Reasonableness**

Liberty doesn't address the "reasonableness" prong in its opening brief at all. Kusha doesn't address this prong, except to argue that the burden falls on Liberty (Opp'n, 10:24–11:7), which is true. Liberty has therefore abandoned this argument and, because it bears the burden of establishing unreasonableness, the Court must find this prong is met as well. Because all three prongs are satisfied, the Court finds it has personal jurisdiction over Liberty.

**Venue**

The briefing on the venue issue is limited to whether venue is or isn't proper. If the Court finds venue is improper, it is within the Court's discretion whether to dismiss or transfer, *See King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992). Here, neither party requests transfer as an alternative to dismissal.

/ / /

Kusha argues venue is proper under § 1391(b)(2) because a "substantial part" of the events giving rise to its claim occurred here. Neither party is located in this District or is alleged to have done anything here, Liberty doesn't do business here, none of Liberty's wholesaler customers are located here, and Liberty didn't aim any of its actions toward this District.

The only thing that happened here is that, after Liberty placed the products bearing the allegedly infringing marks in the stream of commerce, some products eventually sold here. The products weren't sent here for sale by Liberty; there are no allegations or evidence Liberty passed off its goods as Kusha's here, or even knew they would be sold here.[1] *See French Transit, Ltd. v. Modern Coupon Systems, Inc.*, 858 F. Supp. 22, 26–27 (S.D.N.Y. 1994) (distinguishing *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F. Supp. 1343 (D.Or. 1991)) (holding that venue for trademark infringement claims was improper where there was evidence defendant's products were available in the forum district, but no evidence defendant sent them there or had anything to do with distributors selling them there). The evidence suggests that wholesalers who bought the products from Liberty were likely the ones who brought them into this District to sell, though it is also possible there were some other intermediaries. The fact that some confusion or dilution is alleged to have occurred here as the result of Liberty's customers bringing the products into the District to sell is too attenuated to constitute a substantial part of the claim. *See also Dakota Beef, LLC v. Pigors*, 445 F. Supp. 2d 917, 920–21 (N.D.Ill., 2006) (simply maintaining a website accessible to residents of the district did not amount to a substantial part of the alleged infringement).

In short, this District has no substantial connection to the parties' dispute, and at least several districts—those where one of the parties is found or where the online customers to whom Liberty reached out are located—have a much greater connection.

/ / /

---

[1] The two stores Kusha identifies as selling Liberty's products in this District are not members of large chains (*see* Opp'n at 3:8–23, Decl. of Sanjeev Menon, ¶¶ 6–11, and Exs. D–I), so it is not even a reasonable inference that Liberty would have known, based on who its customers were, that the products would end up in this District.

12CV1140

Although Kusha argues this District is proper under the "general" provision of § 1391(b)(3), that provision comes into play only when there are no other districts where venue would be proper. Here, there is at least one district (and possibly more) where venue is proper, *i.e.*, the Eastern District of Michigan, where Liberty is located and where Liberty's uncontroverted evidence shows its sales of the products bearing the allegedly infringing products occurred. § 1391(b)(1). It is also possible venue is proper in the Central District of California, where Kusha is located.

Kusha therefore has not met its burden of showing that venue is proper in this District. Because the parties haven't expressed a preference for transfer, nor briefed the propriety of venue in the Central District of California, the Court considers it prudent to dismiss this action rather than transfer it to Liberty's home district.

**Conclusion and Order**

Liberty's requests for judicial notice are not needed, because they go to uncontested matters. They are therefore **DENIED AS MOOT**.

To the extent Liberty's motion seeks dismissal based on lack of personal jurisdiction, it is **DENIED**, but to the extent it seeks dismissal for improper venue it is **GRANTED**. This action is **DISMISSED WITHOUT PREJUDICE**. All pending dates are vacated, and all pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

DATED:  March 21, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

12CV1140